IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03049-MEH

VIOLA MARIE WILLS,

      Plaintiff,

v.

COMMISSIONER, Social Security Administration,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Viola Wills appeals from the Social Security Administration Commissioner's final decision denying her application for disability and disability insurance benefits ("DIB"), originally filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court affirms the administrative law judge's decision.

## <u>BACKGROUND</u>

**I.      Procedural History**

      Plaintiff seeks judicial review of the Commissioner's decision denying her applications for DIB and SSI filed on July 15, 2014. [Administrative Record ("AR") 332-339] After the applications were initially denied on December 17, 2015 [AR 190-200], upon Plaintiff's request,

an administrative law judge ("ALJ") scheduled a hearing for June 1, 2017. [AR 229-257] Plaintiff

was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified.

[AR 53-86] The ALJ issued a written ruling on August 1, 2017 finding Plaintiff was disabled

starting on September 19, 2016. [AR 154-178] Plaintiff, who alleged she became disabled on

January 1, 2014, appealed the decision to the Social Security Administration Appeals Council

("AC"). [AR 268-272] The AC remanded the matter to the ALJ saying,

> The hearing decision does not explain how moderate limitations represent a degree
> of limitation that is incompatible with the ability to do any gainful activity.
> Moreover, the decision does not explain how the evidence of record supports a
> conclusion that the claimant would be unable to consistently fulfill a forty-hour
> work week for a continuous period of at least 12 consecutive months.

[AR 182] Accordingly, the AC ordered the ALJ on remand to

> • Further evaluate the claimant's mental impairments in accordance with the
> special technique described in . . . 20 C.F.R. §§ 404.1520a(c) and 416.920a(c).

> • Give further consideration to the claimant's maximum residual functional
> capacity and provide appropriate rationale with specific references to evidence of
> record in support of the assessed limitations (20 C.F.R. §§ 404.1545 and 416.945
> and Social Security Ruling 85-16 and 96-8p).

> • Further, if necessary, obtain evidence from a medical expert related to the nature
> and severity of and functional limitations resulting from the claimant's impairments
> (20 C.F.R. §§ 404.1513a(b)(2) and 416.913a(b)(2)).

[AR 183-184] The ALJ held another hearing on May 15, 2018 at which Plaintiff's attorney made

an opening statement and closing argument, and Plaintiff and a VE testified. [AR 87-119] At that

hearing, the ALJ warned Plaintiff, "I hate it when a partially favorable decision is appealed because

when it comes back you're putting the whole period under review up for me to re-adjudicate it.

And I don't like it, but sometimes when I look at the case a second time with updated medical

information and the [AC] remarks, I have to deny the whole case." [AR 90] The ALJ issued a

written ruling on August 23, 2018 finding Plaintiff was not disabled from "January 1, 2014" through the date of that decision [AR 8-29], and Plaintiff again appealed. On November 26, 2018, the AC denied Plaintiff's administrative request for review of the ALJ's determination, making the Commissioner's denial final for the purpose of judicial review. [AR 1-7]; *see* 20 C.F.R. § 416.1481. Plaintiff filed her timely complaint with this Court seeking review of the Commissioner's final decision.

## II. Plaintiff's Alleged Conditions

Plaintiff was born on June 16, 1968; she was 46 years old when she filed her applications for DIB and SSI on July 15, 2014. [AR 332, 334] Plaintiff claimed she became disabled on January 1, 2014 [*id.*], but later amended this date during a hearing before the ALJ to April 23, 2014. [AR 95-96] Plaintiff reported that she was limited in her ability to work due to COPD, heart attack, osteoporosis in spine, and thyroid problems. [AR 381] On July 26, 2014, Plaintiff filed a "Function Report," in which she explained that she was limited in her ability to work because "when [she] stand[s] to [sic] long [she] get[s] breathless [she] do[es]n't know when [she] will have chest pains that has [sic] brought [her] to [her] knees and [she] never know[s] when [her] legs will go out." [AR 388] She also stated she can walk "a block" before needing to stop and rest for an hour before she can resume walking. [AR 393]

The record indicates that on April 23, 2014, Plaintiff presented to Southwest Medical Center for chest discomfort and non-specific chest pain. [AR 487] Plaintiff indicated she had no cough or shortness of breath [AR 493], and a physical exam reported clear breath sounds and was negative for respiratory distress of wheezes [AR 494]. The results of an EKG and ECG were normal, but a chest x-ray showed chronic COPD. [AR 494, 496, 501] On June 24, 2014, Plaintiff

presented to Southeastern Colorado Medical Clinic ("SCMC") "to check on COPD and heart issues for SSI." [AR 653] Her chest x-rays from June and July 2014 were negative for acute pulmonic pathology but showed minor pulmonic hyperexpansion. [AR 691, 689, 690]

On July 7, 2014, Plaintiff was brought to the emergency department ("ED") at Southeast Colorado Hospital ("SCH") for chest pain. [AR 644] Plaintiff's blood work and EKG were "unremarkable," and her pain went away after she "got a shot." [AR 644] Plaintiff was diagnosed with unspecified "chest pain," and the provider noted it was not cardiac in nature. [AR 810] On July 10, 2014, Plaintiff presented to Dana Lewis, D.O., at SCMC, to a follow up on her visit to the ED and reported she had had no pain in the last three days. [AR 644] On July 23, 2014, Plaintiff again presented to SCH for chest pain. [AR 827] During transport to the hospital, she reported the pain level was a ten out of ten. [AR 833] Her chest x-ray was normal and "unremarkable." [AR 844] She was diagnosed with costochondritis and instructed to take Motrin for the pain. [AR 845] Plaintiff's pain level was 0 at discharge. [AR 845] Five days later, Plaintiff returned a third time to SCH with chest pain. [AR 850] That day, Plaintiff was transported from SCH to Memorial Hospital ("Memorial") so a cardiac catherization could be performed. [AR 565, 847, 850]

Plaintiff underwent an angiogram and cardiac catheterization at Memorial the next day, July 29, 2014. [AR 565, 573] She was readmitted to Memorial on July 31, 2014, after fainting at dinner with her family. [AR 573, 575] Her only complaint was chest pain; she made no complaints of shortness of breath. [*Id.*] A radiologist determined Plaintiff's chest x-ray showed "minor emphysema, unremarkable otherwise." [AR 573] She was discharged on August 2, 2014 [AR 575], and that day she also visited SCMC for a follow-up on her procedure. [AR 631] Dr. Lewis reported Plaintiff's chest pain was caused by costochondritis, or inflammation of the

muscles, cartilage, and bones in her chest, from lifting a garbage can a day earlier; the inflammation had resolved, and Plaintiff felt "good." [AR 631] Dr. Lewis directed Plaintiff to "[i]ncrease regular exercise; aerobic and weight-bearing (walking and simple weights). Start looking for a job. You are ready. You no longer have a physical disability." [AR 631, 633]

On August 11, 2014, Plaintiff went to SCMC for a smoking cessation counseling session. [AR 634] Plaintiff reported intermittent depression symptoms and Dr. Lewis directed Plaintiff to go to Southeast Mental Health for an evaluation as soon as possible. [AR 634] A few days later, on August 15, 2014, Plaintiff presented to the ED at SCH for pain in her right groin. [AR 733] She did not want to wait for a machine in the lab to be fixed so she left without undergoing testing. [AR 740] On August 31, 2014, Plaintiff returned to the ED at SCH for pain in her left chest. [AR 742] The pain was diagnosed as costochondritis, and Plaintiff was discharged that day with direction to ice her chest and take it easy. [AR 750]

Plaintiff returned to SCH on September 18, 2014 with pain in her right groin and numbness in her right foot. [AR 751, 753] Plaintiff had an arterial doppler ultrasound of her right leg performed; the test found that blood flow was not well detected in Plaintiff's right femoral artery. [AR 693, 692] From SCH, Plaintiff was brought to Memorial where Gregory Carlson, M.D., diagnosed Plaintiff with atherosclerosis with claudication of the lower right extremity; however, Dr. Carlson noted that her thigh pain and right leg numbness were not explained by her vascular disease or abnormal blood flow. [AR 595, 606, 612, 755] On the day of Plaintiff's discharge, physical therapist Daniel Duvall noted that despite Plaintiff's weakness in her right leg, she "looked remarkably stable during ambulation and transfers with use of [front wheel walker]" and that she "was able to safely navigate stairs with use of B rails." [AR 613] He further noted that

she showed no signs of loss of balance at any time and that she is "safe as long as she uses a walker when she is up." [AR 613] Plaintiff was prescribed a front wheel walker and discharged on September 20, 2014. [AR 525, 527, 613]

Progress notes by Dr. Carlson on October 22, 2014, reported Plaintiff had some mild to moderate arterial insufficiency of her right leg but suggested Plaintiff get the pinched nerves in her spine treated before any endovascular treatment. [AR 618] On October 29, 2014, Plaintiff presented at SCH for pain in her right leg. Imaging of her right leg revealed no abnormalities. [AR 729, 730] The vascular specialist maintained that Plaintiff needed to follow up with a "neuro/back" specialist. [AR 718] Plaintiff visited SCMC the next day, reporting moderate pain in her lower back radiating to her right thigh which was relieved with pain medication. [AR 714] On April 29, 2015, Martin Bautista, M.D., saw Plaintiff in Oklahoma related to an Oklahoma state disability determination. [AR 869-71] Dr. Bautista noted Plaintiff used a walker "for stability" but limped because of pain in her right leg, and that she exhibited normal chest expansion but wheezed. [AR 870] On September 3, 2015, Plaintiff visited SLV Regional Medical Center for low back pain. [AR 888, 890] The provider determined Plaintiff had moderate atherosclerotic disease in her right lower extremity. [AR 890]

On September 20, 2015, Plaintiff presented to the Marillac Clinic for COPD. [AR 937] Plaintiff was advised to quit smoking, and prescribed albuterol inhaler for her shortness of breath. [AR 939] On October 20, 2015, Plaintiff presented to the Marillac Clinic for a cough. [AR 899] She had had a chest x-ray the prior day, which was normal, and she stated her albuterol inhaler was helpful. [AR 899, 942] She was advised to take one puff of her inhaler four times a day and quit smoking to address her COPD with exacerbation. [AR 901, 944]

On November 24, 2015, Plaintiff presented to the Marillac Clinic for low back pain and weakness in her lower extremity.  [AR 903, 948]  Plaintiff claimed she felt unstable to walk any distance.  [AR 903]  Katherine McCrea, M.D., noted Plaintiff was unstable when attempting to stand but that it was unclear if this was due to PVD, back pain, or simply deconditioning.  [AR 905, 950]  On December 8, 2015, Plaintiff returned to the Marillac Clinic for pain in her right leg and lower back.  [AR 955]  Plaintiff noted the pain in her leg was worse when walking and that she found it hard to go up and down the stairs in her apartment.  [AR 955]  Plaintiff said she could walk short distances but used a wheelchair because the pain in her leg would increase.  [AR 955]  Roseanna Jennings, N.P., referred Plaintiff to pain control and physical therapy so Plaintiff could "get out of the wheelchair and be more mobile"  [AR 957]  She noted Plaintiff had moderate atherosclerotic disease in her lower right leg.  [AR 957]  On December 16, 2015, Dr. McCrea noted Plaintiff had been using a wheelchair since August 2015 and used a walker prior to that due to vascular insufficiency.  [AR 961]

On December 28, 2015, Plaintiff visited the Marillac Clinic to make an appointment for her peripheral vascular disease because one of her toes was painful and discolored.  [AR 966] She was immediately referred to the ED where she was admitted to have her right iliac artery stented. [*Id.*]  Plaintiff was discharged from the hospital on December 30, 2015.  [AR 966]  Plaintiff noted her toe was less painful and she was very happy with the results of the procedure.  [AR 966] At a January 18, 2016 visit to the Marillac Clinic, Dr. McCrea noted Plaintiff "has been walking a lot more than before.  Going up and down flights of stairs daily a few days ago."  [AR 975]  Plaintiff returned to the Marillac Clinic on March 1, 2016 to follow up on her stent and because she presented with flu-like symptoms.  [AR 982, 984]  As to the stent, Plaintiff reported she was doing

well and experienced improved blood flow in her foot. [AR 982] She reported walking more, pushing her wheelchair as far as possible and then sitting and resting as needed. [AR 982] A week later, Plaintiff visited the Marillac Clinic to "request to move to walker from wheelchair." [AR 989] Plaintiff reported she was doing well, walking more, and pushing herself on longer and longer walks, going at least a block or more before pain. [AR 989] Dr. McCrea prescribed her a rolling walker to continue her increased activity levels. [AR 991]

On July 7, 2016, Plaintiff presented to the Marillac Clinic reporting she had been having a hard time breathing, especially at night, and coughing more. [AR 955] She reported walking about fourteen miles a day for the previous two weeks. [*Id*.] Two days later, Plaintiff presented to the ED for chest pain and shortness of breath. [AR 1006] Her symptoms resolved in the ED, and the provider determined they were likely brought on by getting overheated while walking in the summer heat. [AR 1006] Plaintiff had a follow up appointment on August 5, 2017 at the Marillac Clinic. [AR 1012] There was no worsening of the stenosis symptoms in Plaintiff's right leg, and she reported that she continued to walk frequently, averaging an estimated five miles per day. [AR 1012]

On October 5, 2016, Plaintiff presented to the Marillac Clinic because she was "not feeling well." [AR 932] Plaintiff reported using her inhalers but feeling like her cough was worsening. [AR 932] Plaintiff was prescribed antibiotics to help address the exacerbation of her COPD. [AR 932] On January 20, 2017, Plaintiff presented to the Marillac Clinic for a follow-up after a short visit to the ED due to shortness of breath compounded by anxiety. [AR 1022] During the visit to the ED, Plaintiff was treated with a nebulizer which helped her symptoms significantly. [AR 1022] Dr. McCrea provided Plaintiff with a nebulizer for home usage when necessary. [AR 1023] On

February 13, 2017, Plaintiff presented to the St. Mary's Lung and Sleep Center in Grand Junction. [AR 1029]  On February 20, 2018, Plaintiff participated in a sleep study at St. Mary's that reported no evidence of sleep disorder breathing.  [AR 1037]

### III.    Hearing Testimony

On June 1, 2017, Plaintiff, represented by counsel, and a VE testified before an ALJ at a hearing on Plaintiff's DIB and SSI benefits applications.  [AR 53-86]

Plaintiff testified she has a high school diploma and was in some special education while in school; she has no training, certificates, or degrees after high school; she is not working and had not worked since January 1, 2014; she is single and has three adult children and sixteen grandchildren, all of whom live out of state; she lives by herself in an apartment; she receives food stamps, Medicaid, and assistance called "AND" ($189 a month); she does not have a television and spends a lot of her time crocheting; she likes listening to music and dancing in her chair; she does not see well enough to spend her time reading; she has a license, but does not have a vehicle and never borrows a car; to get around, she takes the bus or rides with a friend; she loves walking but can only walk a block without falling, even with her walker; the previous summer she was walking about five miles a day but had to cut back; she does not drink, had recently quit smoking tobacco, and does not use any illegal drugs except marijuana; she had been using marijuana every day, but decided earlier that year to cut back to once a month; she has both full-time and part-time employment in her work history, but she has mainly worked part-time; she worked full-time at McDonald's in 2003, Dollar General in 2006, SSA Security from 2008-2010, and ABM Security Services in 2012; a caregiver provided by the state comes to her apartment to help with laundry and cleaning once a week and goes grocery shopping for her once a month; she picks up after

herself, makes her own food, and does her dishes; she has emphysema or COPD and is rasping all the time; she was on oxygen until about two weeks prior because she was told she did not need it; if she does not use a walker, she can only take two or three steps without falling; the pain in her lower leg and back "act up all the time"; everyday she stops what she is doing to sit down for twenty minutes to an hour or lay down with her leg up; she has regular flare ups of her COPD, but has only been to the hospital once in the past three months for breathing treatment since being put on a nebulizer; and, she was currently seeing a psychiatrist or psychologist. [AR 57-77, 79-80]

The ALJ then turned to the VE, Ms. Martindale, who testified that an individual with Plaintiff's age, education, and past work experience and the following limitations –

> this individual could only lift or carry up to ten pounds frequently and twenty pounds occasionally; further this individual could stand or walk with normal breaks for a total of six hours in an eight-hour work day; this individual could sit with normal breaks for a total of six hours in an eight-hour work day; this individual could perform pushing and pulling motions with upper and lower extremities within the weight restrictions given; this individual should avoid unprotected heights and moving machinery; the individual should be restricted to a relatively clean work environment due to her asthma, emphysema, COPD. That means low levels of pollutants and stable temperatures. The individual could perform postural activities occasionally and that would be climbing of ramps and stairs, balancing, stooping, crouching, kneeling and crawling; the individual should not climb any ladders, ropes or scaffolds on the job; and bilateral overhead reach would be limited to only occasional.

– could not perform Plaintiff's past job of "gate guard," but could perform the past job of "fast food worker," and could perform the additional jobs of "storage rental clerk," "furniture rental clerk," and "ticket taker"; if the limitations were further restricted "in that this individual would be limited to the requirement of unskilled work with an SVP of 1 or 2" and "would be mentally unable to consistently fulfill work for eight hours a day, five days a week in order to complete a

forty-hour work week," that individual would be unable to perform any of the jobs listed above and the limitations would eliminate all work. [AR 80-84]

The ALJ issued a partially favorable decision on August 1, 2017. [AR 154-178] Plaintiff appealed the decision and the AC remanded the case to the ALJ on November 22, 2017. [AR 180-185] The ALJ held a subsequent hearing on May 15, 2018 at which Plaintiff's attorney gave an opening statement and closing argument, and Plaintiff and Robert Van Iderstein, a VE, testified. [AR 87-119]

Based on what records were available, Plaintiff's attorney amended the alleged onset date to April 23, 2014. [AR 95-96] Next, the ALJ asked where it was documented that Plaintiff was prescribed a walker, is using a walker, and has been using one back to 2014. [AR 97] Plaintiff testified she was in a wheelchair from July 2014 to August 2015, then started to use a walker in August of 2015, but she could not remember the specialist who directed her to use a walker. [AR 98, 100] The ALJ then turned to the VE, Mr. Van Iderstein, who testified he agreed with the classification of Plaintiff's past work as "fast food worker" and "gate guard"; that an individual with Plaintiff's age, education, and past work experience and the following limitations–

> this individual would require work which is unskilled with an SVP of 1 or 2; requiring routine tasks and simple decision-making; this individual could only lift or carry up to ten pounds frequently and twenty pounds occasionally; this individual could stand or walk with normal breaks for a total of six hours in an eight hour day; the individual could sit with normal breaks for a total of six in an eight hour day; this individual could perform pushing and pulling motions with the upper and lower extremities within the weight restrictions given; this individual should avoid unprotected heights and moving machinery; the individual should be restricted to a relatively clean work environment – meaning low levels of pollutants and stable temperatures; this individual could perform postural activities occasionally and that would be climbing of ramps or stairs, balancing, stopping, crouching, kneeling and crawling; but should not climb any ladders, ropes or scaffolds; bilateral overhead reach would be limited to occasional; and in addition, this individual could stand

or walk with normal breaks for a total of six hours in an eight hour work day the
individual may use a walker to ambulate

– could not perform Plaintiff's past jobs but could perform the jobs of "information clerk,"

"furniture rental consultant," and "storage facility rental clerk"; and if that individual "had

unscheduled absences from work for mental or physical medical care three to five times a month"

or "two or three times a month," or that individual was "unable to deal with the general public or

deal with managers or . . . conduct themselves in an orderly fashion such that they were not off-

task more than 15% of the day," that individual would not be tolerated by any employer. [AR 102-

105, 108-109] The ALJ then discussed the record with Plaintiff's attorney, asking if he could

provide citations to documentation of some of Plaintiff's conditions. [AR 100, 110-16] The ALJ

issued an unfavorable decision on August 28, 2018. [AR 8-29]

## **LEGAL STANDARDS**

To qualify for benefits under sections 216(i) and 223 of the Social Security Act ("SSA"),

an individual must meet the insured status requirements of these sections, be under age 65, file an

application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA.

42 U.S.C. §§ 416(i), 423, 1382. Additionally, SSI requires that an individual meet income,

resource, and other relevant requirements. *See* 42 U.S.C. § 1382.

## I.    SSA's Five-Step Process for Determining Disability

Here, the Court will review the five-step sequential evaluation process used by an ALJ to

determine whether an adult claimant is "disabled" under Title XVI of the SSA, which is generally

defined as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. § 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See* 20 C.F.R. 404.1520(c). Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(e) & (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the Social Security Administration Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 416.920(g).

## II.    Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287

F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . However, [a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citations omitted). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1214 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## **ALJ's RULING**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 23, 2014, the amended alleged onset date (Step One). [AR 14] Further, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder; a pulmonary condition alternatively diagnosed as asthma, emphysema, or chronic obstructive pulmonary disorder (COPD); degenerative disc disease of the lumbar spine, coronary artery disease, and peripheral artery disease (Step Two). [*Id.*] Next, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [*Id.*]

The ALJ then determined that Plaintiff had the RFC to perform light work with the following limitations: the claimant can lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally; can push and pull within the weight restrictions given; can sit for up to six hours in an eight-hour workday; can stand and/or walk for up to six hours in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, or crawl, but could never climb ladders, ropes, or scaffolds; can reach overhead bilaterally on an occasional basis; may use a walker to ambulate; should avoid unprotected heights and moving machinery; and would be restricted to relatively clean work environment, meaning low levels of pollutants and stable temperatures. [AR 16] Additionally, the ALJ determined Plaintiff was limited to unskilled work, with an SVP of 1 or 2, requiring routine tasks and simple decision making. [*Id.*] The ALJ determined the record reflects Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [AR 17]

The ALJ found Plaintiff was unable to perform any of her past relevant work (Step Four). [AR 20] The ALJ then proceeded to determine that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs in the national economy that Plaintiff could perform, such as "information clerk," "furniture rental consultant," and "storage facility rental clerk." [AR 21] As a result, at Step Five of the sequential process the ALJ concluded that

Plaintiff was not disabled from the amended alleged onset date of April 23, 2014 through the date of that decision and, therefore, was not under a disability as defined by the SSA. [AR 22]

Plaintiff sought review of the ALJ's decision by the AC on September 21, 2018. [AR 329-30] On November 26, 2018, the AC notified Plaintiff that it had determined it had "no reason" under the rules to review the decision and, thus, the ALJ's decision "is the final decision of the Commissioner of Social Security." [AR 1-7] Plaintiff timely filed her Complaint in this matter on November 29, 2018. Compl., ECF 1.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following errors: (1) at Step 4 the ALJ failed to properly account for the impairments she found to be severe at Step 2 and, therefore, improperly conducted the RFC analysis; and (2) the ALJ erred in the Step 5 analysis by improperly determining that there was work available in the national economy, given claimant's limitations, contrary to the stated opinions of two Vocational Experts.

## ANALYSIS

The Court will address each of the Plaintiff's issues in turn.

## I.    Whether the RFC Is Supported by Substantial Evidence

Plaintiff makes two main arguments in support of her contention that the ALJ improperly conducted the RFC analysis. First, Plaintiff argues that the ALJ failed to properly account for the impairments she found to be severe at Step Two in conducting the RFC analysis at Step Four. Second, Plaintiff claims an October 23, 2018 letter submitted by Erica Lovett, M.D. rebuts the ALJ's RFC finding. Although this letter was not before the ALJ, Plaintiff contends that it was improper for the AC not to remand the matter back to the ALJ for further consideration in light of

the letter. The Court will begin its discussion with the arguments related to Dr. Lovett's letter, then consider the arguments related to the ALJ's consideration of Plaintiff's impairments and limitations in the RFC analysis.

A.      Dr. Lovett's Letter

In support of her contention that the ALJ improperly conducted the RFC analysis, Plaintiff relies on a letter submitted by Dr. Erica Lovett from October 23, 2018 that "directly rebut[s]" the ALJ's RFC finding. Pl.'s Opening Br. 7, ECF 19. Plaintiff acknowledges that this letter "was submitted post[-]hearing and so was not available to the ALJ of [sic] decision writing." *Id*. She continues, however, that because the letter was available to the AC prior to their determination, the AC's refusal to remand the matter to the ALJ for further consideration in light of Dr. Lovett's letter was improper. *Id*.

Defendant argues the Court should reject Plaintiff's argument related to Dr. Lovett's letter for three reasons: first, the letter was not in the record when the ALJ rendered her opinion and is not relevant to the time-period under the ALJ's review; second, the opinion is not at odds with the ALJ's RFC finding; and third, remand to consider the letter would be futile because the letter is entitled to little weight under the regulations. Def.'s Resp. Br. 8-9, ECF 21. In a footnote, Defendant also argues that the actions of the AC are not before this Court on judicial review, citing the Tenth Circuit's decision in *White v. Schweiker*, 725 F.2d 91, 94 (10th Cir. 1984). *Id*. at 8 n.8.

The Court understands Plaintiff is proffering two separate, but related, arguments: one that the ALJ improperly conducted the RFC analysis, and another that the AC erred by not remanding the issue. The Court disagrees with Defendant that "the actions of the [AC] are not before this Court on judicial review." The *White* court expressly held "that on any matter committed to the

absolute discretion of the [Social Security Administration], the Appeals Council may substitute its judgment for that of the ALJ and the federal courts have no jurisdiction to review that action." *Id*. It does not stand for the proposition that all actions by the AC are beyond judicial review, and Defendant's reliance on this case for that proposition is misplaced. To the contrary, there are many instances of the Tenth Circuit and district courts in this circuit considering the applicability of new evidence submitted to the AC after an ALJ's decision and the AC's treatment of new evidence. *See, e.g., Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *Foy v. Barnhart*, 139 F. App'x 39, 41-42 (10th Cir. 2005), *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1250 (D. Colo. 2009) ("I now turn to the new evidence from the treating physicians provided by Plaintiff to the [AC]."), *Parks v. Colvin*, No. CIV-13-450-R, 2014 WL 2589310, at *4 (W.D. Okla. June 9, 2014) ("The [AC] did not err in its treatment of the new evidence submitted by Plaintiff with her appeal."). The Court, therefore, considers both arguments that the AC erred in failing to remand the matter in light of Dr. Lovett's letter and that the ALJ improperly conducted the RFC analysis because the letter "directly rebut[s]" the ALJ's findings.

"The Appeals Council must 'consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Chambers*, 389 F.3d at 1142 (quoting *Lawson v. Chater*, 83 F.3d 432 (10th Cir. 1996) (internal quotations omitted) (alteration in original)); *see also* 20 C.F.R. §§ 404.970(a)(5) and (b). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. . . . [I]f the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Chambers,* 389 F.3d at 1142.

While both parties acknowledge that Dr. Lovett's letter post-dates the ALJ's decision and proffer arguments on the materiality of the letter's contents, only Defendant discusses whether the letter relates to the period on or before the date of the ALJ's decision. Plaintiff's failure to address this necessary factor is particularly glaring given the AC's explicit determination that Dr. Lovett's letter is not chronologically relevant. Reviewing the letter, the AC stated

> You submitted a letter from Eric Lovett, M.D., . . . dated October 23, 2018 (1 page). The [ALJ] decided your case through August 28, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 28, 2018.
> If you want use to consider whether you were disabled after August 28, 2018, you need to apply again.

[AR 2]

The Court agrees with the AC that Dr. Lovett's letter does not relate to the time period at issue in this case. Dr. Lovett's letter states, in its entirety:

> This is a note to confirm that [Plaintiff] was seen in my office today, Tuesday, October 23, 2018 for a doctor's appointment. She has severe empysema [sic] with pulmonary nodules and peripheral vascular disease. She also has chronic hematuria and bladder hypertrophy with chronic urinary tract infections. At this time, these are unlikely to improve. The empysema [sic] limits her ability to work with prolonged standing, exertion and/or heavy lifting.

[AR 45] On its face, the brief letter provides Dr. Lovett's opinions regarding Plaintiff "at this time," which was almost two months after the ALJ issued her August 28, 2018 decision. The letter is written in the present tense, makes no mention of Plaintiff's medical records or test results from before August 28, 2018, and gives no indication that Dr. Lovett intended this letter to be a retrospective analysis of Plaintiff's condition on or before that date. *Cf. Hart v. Colvin*, 67 F. Supp. 3d 1280, 1284 (D. Colo. 2014) ("In addition, Dr. Lopez's opinion, although authored after the date of the ALJ's decision, relates to the period for which benefits were considered, as it interprets

medical evidence for the period during which benefits are sought."). Instead, the letter can reasonably be understood as simply conveying opinions formed based on the doctor's observations of Plaintiff at the office visit that day.

Because Dr. Lovett's letter does not relate to the period on or before the date of the ALJ's decision, the Court rejects Plaintiff's argument that the AC's refusal to remand the matter to the ALJ for further consideration was improper. The letter's lack of chronological relevance also defeats Plaintiff's contention that the letter "directly rebut[s]" the ALJ's RFC finding. Because the letter is not evidence of Plaintiff's condition during the relevant period, it does not undermine the ALJ's finding that "the claimant has not been under a disability within the meaning of the SSA from January 1, 2014, *through the date of this decision*." [AR 12 (emphasis added)] The letter is not part of the administrative record considered by this Court when evaluating the ALJ's decision for substantial evidence on the remaining issues presented and "plays no further role" in this Court's review. *Chambers,* 389 F.3d at 1142; *see Tollett v. Barnhart*, 60 F. App'x 263, 26 (10th Cir. 2003) (new evidence relating to claimant's depression that was created after ALJ's decision rejecting claim and that dealt solely with period after rejection was not subject to consideration as part of administrative record on appeal).

B.      ALJ's Consideration of Plaintiff's Impairments in her RFC Finding

Plaintiff contends that the ALJ properly determined which impairments were severe at Step Two but failed to incorporate the severe limitations posed by those impairments in the RFC analysis at Step Four. Specifically, Plaintiff claims the ALJ failed to analyze the limitations Plaintiff has in standing and walking that are discussed throughout the record. Plaintiff also contends that the exertional limits set by the ALJ are not consistent with light work.

Defendant responds that the ALJ's determination is supported by substantial evidence, and the ALJ reasonably accounted for Plaintiff's problems with standing and walking when she found that Plaintiff could perform work that allowed her to use a walker. Defendant continues that Plaintiff's subjective complaints do not detract from the substantial medical evidence supporting the ALJ's RFC finding and notes that even if some evidence in the record could support a more restrictive RFC finding, the Court must affirm the ALJ's findings as long as they are supported by substantial evidence in the record.

"It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less. . . . Further, the failure to consider all of the impairments is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citations omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) ("In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not.") (emphasis in original).

In this case, the ALJ considered all of the impairments she found to be severe in conducting the RFC analysis. At Step Two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder; a pulmonary condition alternatively diagnosed as asthma, emphysema, or COPD; degenerative disc disease of the lumbar spine, coronary artery disease, and peripheral artery disease. [AR 14] The ALJ considered and discussed each of these impairments in conducting the RFC analysis and included limitations in her findings responsive to each of them. [*See* AR 18-20]

The ALJ also considered Plaintiff's difficulty with standing and walking in connection with Plaintiff's severe and non-severe impairments. Although it is unclear exactly which impairments contribute to Plaintiff's difficulties with standing and walking, Plaintiff states in her brief that throughout the applicable period, she "was frequently noted to suffer severe limitations in her lower extremities due to peripheral vascular disease." Pl.'s Br. 7. Plaintiff's medical records, however, indicate that at least some of the pain she experienced in her right leg was not caused by her circulation issues. [*See* AR 606, 612] The ALJ acknowledged Plaintiff's mobility and leg pain complaints in her discussion of Plaintiff's spinal stenosis, degenerative disc disease, periphery artery disease, and atherosclerotic disease. [AR 18-19] Considering all of Plaintiff's impairments and issues with standing and walking, the ALJ concluded,

> Because of the claimant's back and leg conditions . . . she is limited to light work. Pain from the claimant's peripheral artery disease and degenerative disc disease further limits her to only occasionally performing postural activities. Her pain in her legs would limit her to never climbing ladders, ropes or scaffolds. . . Because the claimant reported she regularly uses a walker for support, it is included in the above RFC along with reaching overhead bilaterally on an occasional basis.

[AR 19] The ALJ then stated that, "[t]he record does not support additional physical limitations." [*Id*.]

The ALJ concluded that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [AR 17] In her decision, the ALJ identified numerous instances in the record that support her finding that no additional physical limitations are required, with particular focus on Plaintiff's reported difficulty walking. [AR 19]

The ALJ notes, for example, instances in the record when Plaintiff reported walking up to fourteen miles per day and going up and down stairs daily.

Upon review of the record, the Court finds that the ALJ's RFC findings are supported by substantial evidence. The record includes numerous entries in which Plaintiff had good movement, sensation, and no pain in all extremities [*see, e.g.,* AR 712, 815, 855], and reported doing extensive walking, including one instance where she reported fourteen miles a day for two weeks [AR 995], and another where she estimated she was averaging about five miles per day [AR 1012]. There are also reports that Plaintiff "looked remarkably stable during ambulation and transfers" while using her walker, showed no signs of loss of balance, and could successfully navigate obstacles with her walker. [AR 613] As it relates to Plaintiff's breathing issues, the record includes numerous entries where Plaintiff had no cough or shortness of breath [*see, e.g.,* AR 493, 632, 767], and presented no respiratory issues, normal respiratory effort, normal breath sounds, and no wheezing, [*see* AR 949, 548, 555, 558, 559, 632]. Various x-rays of Plaintiff's chest showed "minor pulmonic hyperexpansion" that was "stable" or "minor emphysema, unremarkable otherwise" [AR 573, 689, 691].

"[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin*, 365 F.3d at 1214. In this case, there is far more than a "mere scintilla" of evidence supporting the limitations included in the ALJ's RFC determination, and that determination is not overwhelmed by contrary evidence. Because the ALJ's findings are supported by substantial evidence, "they are conclusive upon the reviewing court and may not be disturbed." *Trujillo*, 429 F.2d at 1150.

Plaintiff also argues that the exertional limits set by the ALJ are consistent with sedentary work, not light work, as those categories are defined under the regulations and that the record directs a finding Plaintiff was restricted to sedentary work. In support, Plaintiff quotes the definitions of light and sedentary work from 20 C.F.R. § 404.1567 (a) and (b), and emphasizes, in part, that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met," whereas a job is considered "light work" "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Pl.'s Br. 9. She continues that her need for a walker would preclude "a good deal of walking or standing." She also cites to a doctor's note in the record on July 28, 2014 that Plaintiff's chest pain reliably provoked by exercise." Pl.'s Br. 10 (citing AR 557).[1] Plaintiff's argument does not support her conclusion that the limitation of using a walker is inconsistent with light work. There is nothing about using a walker that would necessarily preclude "a good deal of walking or standing," especially considering there are multiple instances in the record when Plaintiff reported walking several miles a day while using her walker. Plaintiff's argument also overlooks that "light work" includes jobs that "involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## II.    Whether the ALJ Erred at Step Five

The second issue raised by Plaintiff on appeal is whether the ALJ erred at Step 5 when she determined that there was work available in the national economy Plaintiff could perform. Plaintiff

---

[1] Plaintiff also relies on Dr. Lovett's October 23, 2018 letter to support her contention that the ALJ should have found her limited to sedentary work. Pl.'s Br. 10. As discussed above, the Court does not consider Dr. Lovett's letter in assessing whether the ALJ's findings are supported by substantial evidence because the letter is not chronologically relevant.

argues that her medical records show she required regular care—more than two times a month—during the applicable period. At both ALJ hearings, Plaintiff's counsel elicited testimony from the VE that multiple, unscheduled absences from work in a month would effectively preclude all competitive employment. Specifically, the testimony was as follows:

> Q: . . .[A]ssume that this individual would have the same restrictions as the individual in hypothetical 2, but this individual would be further restricted because this individual . . . would miss at least three days a month on an unscheduled basis. Could such an individual return to past work?
> A: No.
> Q: Would there be other work for such an individual?
> A: No.

[AR 83-83]

> Q: . . . [I]n any of the hypotheticals if this hypothetical individual had unscheduled absences from work for . . . medical care three to five times a month, would that be tolerated by any employer?
> A: No, sir, it would not.
> Q: What if it was just two or three times a month, would that be tolerated?
> A: No, not unscheduled, it would not.

[AR 108-109] Plaintiff argues that the above testimony "establishes conclusively the [Plaintiff] could not obtain or maintain competitive employment in the national economy." Pl.'s Br. 11.

Defendant responds that the ALJ asked the VE several hypothetical questions at the May 2018 hearing, but ultimately adopted only the limitations from the first hypothetical question in her RFC finding. Because this hypothetical adequately accounted for Plaintiff's impairments, Defendant continues, the ALJ could reasonably rely on the VE's response to that question in finding that Plaintiff could perform jobs existing in significant numbers in the national economy. Defendant also contends that Plaintiff's argument reflects a mistake belief that the ALJ must find credible every functional limitation included in a hypothetical question to the VE. Defendant concludes that the ALJ did not err by setting aside the VE's answer to Plaintiff's counsel's

hypothetical that assumed facts she rejected, and notes that holding otherwise would foreclose ALJs from asking multiple hypotheticals.

When the disability analysis reaches Step Five, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments given her age, education, and work experience. *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005); *see also* 20 C.F.R. § 404.1560(c)(1). "A [VE]'s testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypotheticals posed to the expert." *Vail v. Barnhart*, 84 F. App'x 1, 4 (10th Cir. 2003); *see also Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he hypothetical questions posed to the VE to assist with the step-five determination must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996))). A VE's response to a hypothetical question that meets this standard constitutes substantial evidence for an ALJ's disability decision. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). "An ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010).

In this case, the ALJ did not err by not adopting the VE testimony elicited by Plaintiff's hypotheticals because Plaintiff's hypotheticals included limitations that were more restrictive than those ultimately adopted by the ALJ and were not supported by the record. Plaintiff claims that "[t]he medical record clearly shows that [Plaintiff] required regular and ongoing care more than two times a month during the applicable period." Pl.'s Br. 11. The Court disagrees with Plaintiff's

characterization. While there are months in the applicable period during which Plaintiff had two or more medical visits of some kind, for the majority of months in the relevant time period there is no record of any medical visits or records of only a single visit. Additionally, a significant portion of Plaintiff's medical visits were visits to the ED which, unlike a regular doctor's appointment, can occur at any time of day and any day of the week. Thus, such visits do not necessarily support the theory behind Plaintiff's hypotheticals, that they would result in an absence from work. "Hypothetical questions need only reflect impairments and limitations supported by the record." *Olivas v. Barnhart*, 37 F. App'x 970, 972 (10th Cir. 2002). While "[a]n ALJ is required to accept and to include in his hypothetical questions limitations supported by the record," *Vail*, 84 F. App'x at 4, an ALJ is not required to accept the answer to a hypothetical question that includes limitations claimed by a plaintiff but not accepted by the ALJ as supported by the record, *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

The VE's testimony in response to the ALJ's first hypothetical, which adequately reflected Plaintiff's impairments, constituted substantial evidence for the ALJ's disability decision. *See Qualls*, 206 F.3d at 1373. That testimony provided a proper basis for the ALJ's conclusion that there exist jobs in significant numbers in the national economy that the Plaintiff can perform. *Vail*, 84 F. App'x at 4. Because the ALJ's determination is supported by substantial evidence, it is affirmed.

## CONCLUSION

In sum, the Court concludes the ALJ considered all of Plaintiff's impairments, including her reported difficulty with walking and standing, in analyzing Plaintiff's RFC, and that the RFC findings are supported by substantial evidence. Further, the ALJ did not err in failing to adopt

the VE testimony elicited by Plaintiff's hypothetical and instead adopting and relying on testimony elicited by her own hypothetical that adequately reflected Plaintiff's impairments and limitations contained in the RFC findings.  Accordingly, the decision of the ALJ that Plaintiff Viola Wills was not disabled from January 1, 2014 is AFFIRMED.

Dated at Denver, Colorado this 13th day of March, 2020.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge